

**SIGNED this 18th day of July, 2013.**

_____
**TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 12-11535-TMD |
| ROBERT GLEN HIGGS, | § | CHAPTER 7 |
| Debtor. | § | |

| | | |
|---|---|---|
| FINE LUMBER & PLYWOOD, INC., | § | |
| Plaintiff, | § | |
| | § | ADV. NO. 12-01134-TMD |
| v. | § | |
| | § | |
| ROBERT GLEN HIGGS, | § | |
| Defendant. | § | |

### MEMORANDUM OPINION

Before the Court is the Complaint to Determine Dischargeability of Debt, pursuant to 11 U.S.C. § 523(a)(2)(A), filed by Fine Lumber & Plywood, Inc. ("Fine Lumber") on October 9, 2012 ("Complaint"). On April 23, 2013, the Court conducted a bench trial in this adversary proceeding. The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334, and venue is proper under 28 U.S.C. § 1409(a). This proceeding arises in a case referred to the Court by the Standing Order of Reference entered in this District and is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts) and (O) (determinations as to an interest of the bankruptcy estate). Thus, the Court is authorized to enter a Final Order in this proceeding.

In reaching its determination, the Court considered the direct testimony, the demeanor and credibility of the witness, all admitted exhibits, and the record in this adversary proceeding. The Court also considered the oral arguments and statements of counsel, and the pleadings filed by the parties. To the extent any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure. For the reasons stated in this Memorandum Opinion, the Court finds that the debt at issue in this adversary proceeding is dischargeable.

I. Factual and Procedural Background

On October 9, 2012, Fine Lumber filed this adversary proceeding against Defendant Robert Glenn Higgs ("Higgs") seeking a determination that its claim of $4,926.11 is non-dischargeable in Higgs's bankruptcy case pursuant to § 523(a)(2)(A). In the Complaint, Fine Lumber argues that Higgs obtained materials on credit by falsely representing that he made the purchases on behalf of a limited liability company, when the limited liability company could not do business in Texas at the time of the purchase. Fine Lumber also contends that Higgs made this representation with an intent to deceive, and that Fine Lumber justifiably relied on the representation to its detriment.

In his *pro se* Answer to the Complaint, Higgs denies representing that he purchased materials from Fine Lumber on behalf of his limited liability company, and asserts that Fine

Lumber extended credit to him personally. Higgs also asserts that the invoices do not contain a representation that he purchased the materials on behalf of his limited liability company because he signed the invoices personally. After filing the Answer, Higgs filed no further pleadings with the Court and did not appear at trial.

The undisputed facts are that Higgs executed Fine Lumber's purchase and credit application on September 30, 2004 (the "Application"). [Plaintiff's Exhibit P-1]. In the application, Higgs listed the type of business as "Construction LLC." Fine Lumber then extended credit based on the Application. For several years, Higgs, presumably acting through "RH Construction," made purchases from Fine Lumber on credit and paid for those purchases. However, an invoice dated February 2, 2012 and an invoice dated January 16, 2012 (the "Invoices") were not paid. [Plaintiff's Exhibit P-3]. The Invoices total $4,926.11. It is also undisputed that RH Construction was an assumed name of RHC Consultants, LLC, that RHC Consultants, LLC forfeited its right to do business in Texas on July 24, 2009, and that RHC Consultants, LLC has not, since July 24, 2009, had a right to do business in Texas.

II.  Testimony

During trial, Robert Timmerman, owner and president of Fine Lumber, testified that Fine Lumber frequently sells wholesale lumber and related materials to companies on credit. Timmerman stated that to obtain credit, a company must fill out a credit application and list the names of vendors that currently offer the company credit to serve as references. To decide whether to extend credit, Fine Lumber reviews the application and calls the companies listed as references to check the applicant's credit worthiness. Timmerman further testified that he would not have extended credit to Higgs, personally, without approving a new credit application filled out by Higgs, personally. However, after reviewing the Application, Timmerman noted that the

3

only reference listed was Compass Bank and speculated that either (1) there was a page missing from the Application, or (2) the Application predated the credit reference policy. [Plaintiff's Exhibit P-2.] Timmerman also stated that banks are generally not good references. Timmerman went on to say that if Higgs had filled out a credit application in 2012, the application would have been denied if no vendors were listed. Timmerman testified that the only representations Higgs made were those contained in the Application.

As evidence of Higgs's intent to deceive, Fine Lumber introduced the following excerpt from the meeting of creditors in Higgs's bankruptcy case.

> Voelker: I have some invoices from Fine Lumber & Plywood that show RH Construction made purchases in January and February of 2012. Do you know why those purchases were made?
>
> Higgs: For jobs.
>
> Voelker: But you just told me that RH Construction hadn't done business for a year or year and a half.
>
> Higgs: Uhm, it's my account with them. I mean . . . It was materials for me. It was just my account with them.
>
> Voelker: So you personally acquired materials for Escavero Cove and Euclid – personally, but using the account owned by RH Construction limited liability company. Is that what you are saying?
>
> Higgs: Yes. I wasn't sure how the account was set up.
>
> Voelker: Is that your signature on each of those documents?
>
> Higgs: Yeah. Yeah.
>
> Voelker: So were you the one that ordered them?
>
> Higgs: Yeah. I picked them up.
>
> Voelker: That's all. Thank you, sir.

[Plaintiff's Exhibit P-6.]

4

III.    Legal Analysis

Even if a Defendant does not appear at trial, the Plaintiff must still establish the elements of a cause of action if the Defendant filed an answer to the complaint. *Bass v. Hoagland*, 172 F.2d 205, 210 (5th Cir. 1949).[1] Under § 523(a)(2)(A) of the Bankruptcy Code, an individual debtor cannot discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A). A creditor must prove a debt is non-dischargeable by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *AT&T Universal Card Services v. Mercer,* 246 F.3d 391, 403 (5th Cir. 2001).

According to the Fifth Circuit, for a debt to be non-dischargeable under § 523(a)(2)(A), a creditor must show by a preponderance of the evidence that: (1) the debtor made a representation; (2) the debtor knew the representation was false; (3) the representation was made with the intent to deceive the creditor; (4) the creditor actually and justifiably relied on the representation; and (5) the creditor sustained a loss as a proximate result of its reliance. *General Electric Capital Corp. v. Acosta*, 406 F.3d 367, 372 (5th Cir. 2005).[2] If the debtor is under a duty to speak, silence can be a false representation under §523(a)(2)(A). *Mercer*, 246 F.3d at 404 (citing RESTATEMENT (SECOND) OF TORTS § 551 (1977)).[3]

---

[1] "When Bass by his attorney filed a denial of the plaintiff's case neither the clerk nor the judge could enter a default against him. The burden of proof was put on the plaintiff in any trial. When neither Bass nor his attorney appeared at the trial, no default was generated; the case was not confessed. The plaintiff might proceed, but he would have to prove his case." *Bass*, 172 F.2d at 210. Additionally, Fine Lumber did not move for a default judgment in accordance with Fed. R. Civ. P. 55; therefore, Fine Lumber must prove that the debt is non-dischargeable even though Higgs did not appear at trial.

[2] Although earlier Fifth Circuit cases distinguish between "false pretenses", "false representations" and "actual fraud," more recent Fifth Circuit cases list the same elements for all three. *See e.g. Acosta*, 406 F.3d at 372 (listing elements under § 523(a)(2)(A) generally); *Mercer*, 246 F.3d at 403. At trial, counsel for Fine Lumber agreed that Fine Lumber needed to prove the five elements listed by the Fifth Circuit in *Acosta*.

[3] According to Restatement (Second) of Torts, "[o]ne party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, (a) matters know to him that

To satisfy the third element, the Plaintiff must show that the misrepresentation was knowingly and fraudulently made. *Acosta*, 406 F.3d at 372 (citing *In re Martin*, 963 F.2d 809, 813 (5th Cir. 1992)). A Court may infer an intent to deceive "from reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation." *Acosta*, 406 F.3d at 372 (citing *In re Norris*, 70 F.3d 27, 30 n.12 (5th Cir. 1995)). In addition, a Court can look at the totality of the circumstances to determine whether a debtor acted with an intent to deceive. *In re Morrison,* 555 F.3d 473, 482 (5th Cir. 2009). However, "an honest belief, even if unreasonable, that a representation is true and that the speaker has information to justify it does not amount to an intent to deceive. Thus, a 'dumb but honest' defendant does not have scienter." *Acosta*, 406 F.3d at 372 (citing *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997)).

The fourth element requires the Plaintiff to show that it justifiably relied on the misrepresentation. *Field v. Mans*, 516 U.S. 59, 74 (1995). A person is justified in relying on a representation of fact even if "he might have ascertained the falsity of the representation had he made an investigation." *Id.* at 70 (citing RESTATEMENT (SECOND) OF TORTS § 537 (1977)). However, "a person is required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Id.* at 70–71.

---

the other is entitled to know because of a fiduciary or other similar relation of trustee and confidence between them; and (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." RESTATEMENT (SECOND) OF TORTS § 551 (1977).

6

As stated above, Fine Lumber must establish each of the five elements by a preponderance of the evidence. In this case, Fine Lumber failed to demonstrate at least three.

First, Fine Lumber failed to show that Higgs made a false representation. In fact, it is unclear from the Complaint what representation is at issue in this case. The subject representation is either the statement on the Application that Higgs would purchase materials on behalf of a limited liability company or the representation on the two unpaid invoices that the materials were ordered by RH Construction. If the representation was in the Application, the representation was not false because in 2004, when Higgs completed the Application, RH Construction was a d/b/a of RHC Consultants, LLC, a validly registered limited liability company. At trial, Fine Lumber contended that the false representation was Higgs writing "RH Construction" on the subject invoices when RHC Consultants, LLC d/b/a RH Construction had forfeited its charter several months before. However, Higgs did not write RHC Consultants, LLC on the invoice, he wrote "RH Construction." In addition, there is no evidence that Higgs no longer did business as RH Construction after the limited liability company lost its charter. In fact, in his Answer, Higgs stated that the purchases were made for RH Construction and that RH Construction still existed. Thus, the question is whether Higgs had a duty to tell Fine Lumber that RHC Consultants, LLC (of which RH Construction was a d/b/a) forfeited its charter and lost its status as a limited liability company, and Fine Lumber did not establish that Higgs had such a duty.

Second, the evidence fails to demonstrate that Higgs intended to deceive Fine Lumber, because the excerpt taken from the meeting of creditors demonstrates that Higgs did not know or understand the significance of the name of the buyer on the invoice. At the meeting, Higgs stated that he purchased the materials described in the invoices "[f]or jobs" and seemed confused

7

when counsel noted that RH Construction had not done business for a year and a half. Specifically, Higgs said, "[i]t's my account with them. I mean…it was materials for me. It was just my account with them." This suggests, if anything, that Higgs did not differentiate between himself and RH Construction. Counsel then demonstrated Higgs's confusion with the different names by asking, "So you personally acquired materials for Escavero Cove and Euclid – personally, but using the account owned by RH Construction, limited liability company. Is that what you're saying?" Higgs answered, "Yes, I wasn't sure how the account was set up." This indicates that Higgs did not recall or put any significance on the fact that he filled out an 8-year old application on behalf of RHC Consultants, LLC, d/b/a RH Construction, rather than in his own name. If Higgs did not differentiate between himself and his company (or his d/b/a, for that matter) or understand the significance of the name on the invoice, he could not have put "RH Construction" on the invoice with an intent to deceive Fine Lumber. Moreover, there is no evidence that Higgs knew that Fine Lumber attached any significance to the name on the invoice. If Higgs did not know that Fine Lumber was relying on the name on the invoice, Higgs could not have known how to use the name, RH Construction, to deceive Fine Lumber.

Although the Court can look to the totality of the circumstances to infer an intent to deceive, the totality of circumstances, shown by the scarce evidence before the Court, suggests, if anything, that Higgs did not intend to deceive Fine Lumber. The evidence shows that Higgs signed a credit application, purportedly on behalf of a limited liability company. Then, purporting to act on behalf of the limited liability company, Higgs purchased lumber for some years from Fine Lumber. At some point, Higgs allowed the limited liability company's charter to lapse, but continued to buy on credit without telling Fine Lumber about the lapsed charter. However, because the excerpt from the meeting of creditors does not demonstrate that Higgs

8

knew putting RH Construction on the invoice would deceive Fine Lumber, the elements of § 523(a)(2)(A) are not satisfied. Thus, looking at the totality of the circumstances, there is insufficient evidence of an intent by Higgs to deceive Fine Lumber.

Finally, Fine Lumber also failed to prove that it "justifiably" relied on the representation that Higgs made purchases on behalf of RH Construction because there is no evidence that Fine Lumber made so much as "a cursory examination or investigation" into RH Construction's creditworthiness. *Fields*, 516 U.S. at 71. The evidence shows that Fine Lumber's normal practice is to ask for three to five references from other vendors of the applicant. In the case of RH Construction's credit application, Fine Lumber obtained no references from any vendor. In fact, the only reference listed on the application was from a bank and Timmerman testified that bank references are generally unreliable. Thus, Fine Lumber failed in this case to follow its own credit standards. As a result, it could not have justifiably relied on RH Construction's creditworthiness, when it granted the credit application in 2004, or when it continued extending credit through subsequent invoices.

Moreover, there is no evidence that Fine Lumber requested, let alone reviewed, financial statements or any other information in making its initial decision to extend credit to RH Construction, or in extending credit with the additional invoices. Thus, it is hard to see why the fact that Higgs at one time conducted business under the name of a d/b/a of a limited liability company, as opposed to individually, would be something that Fine Lumber could justifiably rely on, or why the continued good standing of the limited liability company would make a difference in Fine Lumber's subsequent decisions to extend credit. Although Timmerman testified that he would not have extended credit to Higgs individually, and made a vague reference to Higgs's family, he did not explain why he was willing to extend credit to RHC

9

Consultants, LLC, d/b/a RH Construction, but not to Higgs, d/b/a, RH Construction. Indeed, there is no evidence that Fine Lumber conducted any more diligence in reviewing the creditworthiness of the limited liability company than in reviewing the creditworthiness of Higgs.

IV. Conclusion

In conclusion, the Court holds that the debt to Fine Lumber scheduled in Higgs's bankruptcy case is dischargeable because Fine Lumber failed to show by a preponderance of the evidence (1) that Higgs made a false representation; (2) that he did so with an intent to deceive; and (3) that Fine Lumber justifiably relied on the representation. The Court will enter a Final Judgment that incorporates its holding in this Memorandum Opinion.

# # #